2012-1688

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

AMS ASSOCIATES, INC.

Plaintiff-Appellant

v.

UNITED STATES,

Defendant-Appellee

and

LAMINATED WOVEN SACKS COMMITTEE,
COATING EXCELLENCE INTERNATIONAL, LLC and
POLYTEX FIBERS CORPORATION

Defendant-Appellees.

Appeal from the United States Court of International Trade
Case No. 11-00101
R. Kenton Musgrave, Senior Judge

---

PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT

---

Lizbeth R. Levinson
Ronald M. Wisla

KUTAK ROCK LLP
1101 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
 Tel:  (202) 828-2400
 Fax:  (202) 828-2488

November 26, 2012

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AMS ASSOCIATES, INC. _____ v. UNITED STATES _____

No. 12-1688

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
AMS ASSOCIATES, INC. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

AMS ASSOCIATES, INC. d/b/a SHAPIRO PACKAGING

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

NONE

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NONE

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

KUTAK ROCK LLP
GARVEY SCHUBER BARER

10/16/12
Date

_Lizbeth R. Levinson_
Signature of counsel

Lizbeth R. Levinson
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

TABLE OF CONTENTS     i

TABLE OF AUTHORITIES     ii

STATEMENT OF RELATED CASES     1

JURISDICTIONAL STATEMENT     2

STATEMENT OF THE ISSUES     2

STATEMENT OF THE CASE     3

STATEMENT OF THE FACTS     3

SUMMARY OF THE ARGUMENT     7

ARGUMENT     8

I.    Statement of the Standard of Review     8

II.    Commerce's Determination That It Had No Record Evidence Upon Which To Determine Whether Aifudi Was Eligible For A Separate Rate Is Unsupported By Substantial Evidence In The Administrative Record     8

III.    Application of the China-Wide Rate As To Aifudi Was Contrary To Law Because Aifudi Was Entitled To Separate Rate Status     17

IV.    Conclusion And Statement Of Relief Sought     22

# TABLE OF AUTHORITIES

Page

**Statues**

28 U.S.C. § 1581(c)                                           1

19 U.S.C. § 1516a(a)(2)(B)(iii)                              1

19 U.S.C. §1675(a)                                            1

28 U.S.C. § 1295(a)(5)                                        2

19 U.S. C. § 1516a(b)91(b)(i)                                8


**Cases**

AMS Associates, Inc. d/b/a Shapiro Packaging v. United States,
36 CIT ___, Slip Op. 12-98 (July 27, 2012)                   2, 6, 11

Burlington Truck Lines, Inc. v. United States,
371 U.S., 156, 168-69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)    11

Gerber Food (Yunnan) Co. v. United States,
31 CIT ___, Slip Op. 07-85 (May 24, 2007) (Gerber II)        18, 20

Gerber Food (Yunnan) Co. v. United States,
29 CIT 753, 387 F. Supp. 2d 1270, 1287 (2005) (Gerber 1)     18-20

Micron Tech., Inc. v. United States,
117 F.3d 1386, 1393 (Fed. Cir. 1997)                         11

NEC Home Elecs., Ltd. v. United States,
54 F.3D 736, 743 (Fed. Cir.1995)                             11

Qingdao Taifa Group Co., Ltd. v. United States,
33 CIT ___, 637 F. Supp. 2d 1231, 1240 (August 11, 2009)     18

Saha Thai Steel Pipe Public Co., Ltd. v. United States,
635 F.3d 1335, 1340 (Fed. Cir. 2011)                         8

**Cases Cont'd**

Shandong Huarong General Group Corporation v. United States,
27 CIT 1568, 1594-1596 (2003)      18, 21

Sigma Corp. v. United States,
117 F. 3d 1401, 1404-05 (Fed. Cir. 1997)      17

Taian Ziyang Food Co., Ltd. v. United States,
637 F. Supp. 2d 1093, 1132 (2011)      11


**Administrative Decisions**

Laminated Woven Sacks from the People's Republic of China,
76 Fed. Reg. 14906 (March 18, 2011)      1, 5-6, 9, 17

Laminated Woven Sacks from the People's Republic of China,
74 Fed. Reg. 48224 (September 22, 2009)      3

Laminated Woven Sacks from China: Preliminary Results of Antidumping
Duty Administrative Review,
75 Fed. Reg. 55568, (September 13, 2010)      4, 5, 12, 14

Laminated Woven Sacks form the People's Republic of China,
73 Fed. Reg. 35646, 35647 (June 24, 2008)      16

## STATEMENT OF RELATED CASES

In accordance with Fed. Cir. Rules 28(a)(4) and 47.5, counsel for AMS

Associates, Inc. d/b/a Shapiro Packaging ("Shapiro Packaging") certifies to the

best of its knowledge that: (1) there has never been any other appeal in or from the

U.S. Court of International Trade decision being appealed herein, either in this

appellate court or any other appellate court; and (2) there is no other case known to

counsel to be pending in this or any other court that will directly affect or be

directly affected by this court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

Shapiro Packaging initiated a civil action with the U.S. Court of

International Trade to contest the U.S. Department of Commerce's ("Commerce")

final results of the January 31, 2008 – July 31, 2009 administrative review of

Laminated Woven Sacks from the People's Republic of China; Final Results of

First Antidumping Duty Administrative Review, 76 Fed. Reg. 14906 (March 18,

2011) ("Final Results").  Subject matter jurisdiction rested with the U.S. Court of

International Trade pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §

1516a(a)(2)(B)(iii), which vest exclusive jurisdiction over a civil action contesting

the final determination by Commerce in an administrative review conducted

pursuant to 19 U.S.C. §1675(a).

On July 27, 2012, the U.S. Court of International Trade affirmed

Commerce's final results in all respects and issued an order dismissing the case as

it had disposed of all the claims raised by Plaintiff. <u>AMS Associates, Inc. d/b/a</u>

<u>Shapiro Packaging v. United States</u>, 36 CIT ___, Slip Op. 12-98 (July 27, 2012).

The subject matter jurisdiction of this court is based upon 28 U.S.C. §

1295(a)(5), which vests this court with exclusive jurisdiction of an appeal from a

final decision of the U.S. Court of International Trade. On September 25, 2012,

within 60 days of the issuance of the U.S. Court of International Trade final order,

AMS Associates, Inc. filed a timely notice of appeal with the U.S. Court of

International Trade. This court docketed the appeal on September 27, 2012.

## STATEMENT OF THE ISSUES

A.    Whether Commerce's determination stating that it did not have any record

evidence upon which to determine whether Zibo Aifudi Plastic Packaging

Co., Ltd. ("Aifudi") was eligible for a separate rate during the period of

review was supported by substantial evidence in the administrative record?

B.    Whether Commerce's selection of the China-wide rate for Aifudi as total

adverse facts available ("AFA") was in accordance with law?

## STATEMENT OF THE CASE

This case is an appeal from the final judgment of the U.S. Court of International Trade in <u>AMS Associates, Inc. d/b/a Shapiro Packaging v. United States</u>, 36 CIT ___, Slip Op. 12-98 (July 27, 2012). *See* Joint Appendix at pages ("A") 011-020. The decision of the lower court affirmed Commerce's final results of the first administrative review of <u>Final Results</u>, *supra* A028-032.

## STATEMENT OF THE FACTS

Shapiro Packaging is a U.S. importer of laminated woven sacks ("LWS"), including LWS imported from China from its affiliate Zibo Aifudi Plastic Packaging Co., Ltd ("Aifudi").

Commerce initiated an administrative review of exports of Chinese LWS exported by Aifudi for the period January 31, 2008 – July 31, 2009. <u>Initiation Notice</u>, 74 Fed. Reg. 48224 (September 22, 2009). On October 19, 2009, Aifudi submitted proprietary and public versions of its initial questionnaire response, which included its response to the separate rate section of the questionnaire. On November 6, 2009 Aifudi supplemented the response by submitting proprietary and public versions of its business license application process and its 2006 and 2007 capital verification reports. On January 14, 2010, Aifudi submitted public and proprietary versions of its response to Commerce's first supplemental questionnaire, portions of which related to its eligibility for a separate rate.

3

Subsequent to these submissions, Commerce requested no further information

from Aifudi relating to the separate rate issue.

Based upon record information submitted by Aifudi relating to its eligibility

for a separate rate, Commerce's preliminary results determined that Aifudi was

entitled to separate rate status. Laminated Woven Sacks from China: Preliminary

Results of Antidumping Duty Administrative Review, 75 Fed. Reg. 55568,

(September 13, 2010) ("Preliminary Results"). A021-027. With respect to Aifudi

operating free of *de jure* government control, Commerce concluded:

> Specifically, the evidence provided by Zibo Aifudi
> supports a preliminary finding of de jure absence of
> governmental control based on the following: (1) An
> absence of restrictive stipulations associated with the
> individual exporter's business and export licenses; (2) the
> existence of applicable legislative enactments
> decentralizing control of Chinese companies: and (3) the
> implementation of formal measures by the government
> decentralizing control of Chinese companies.

Preliminary Results, *supra* at 55570. A023.

With respect to Aifudi operating free of *de facto* government control,

Commerce concluded:

> The evidence provided by Zibo Aifudi supports a
> preliminary finding of de facto absence of governmental
> control based on record statements and supporting
> documentation showing that the company: (1) set its own
> export prices independent of the government and without
> the approval of a government authority; (2) has the
> authority to negotiate and sign contracts and other
> agreements: (3) maintains autonomy from the

> government in making decisions regarding the selection
> of management; and (4) retains the proceeds of its export
> sales and makes independent decisions regarding
> disposition of profits or financing of losses.
>
> Therefore the evidence placed on the record of this
> review by Zibo Aifudi demonstrates an absence of de
> jure and de facto government control under the criteria
> identified in Sparklers and Silicon Carbide. Accordingly,
> the Department has preliminarily granted Zibo Aifudi
> separate rate status.

*Id.* at 55571;  A024.

After the preliminary results, no new information relating to the separate rate

status of Aifudi was requested by Commerce, provided by Aifudi, or questioned by

Petitioners.

On September 20, 2012, subsequent to the preliminary results, Aifudi

withdrew from the administrative review and advised the Department that it would

no longer participate as a party in this proceeding.  Final Results, *supra* at 14907;

A029.  Additionally, Aifudi requested that that Commerce destroy all business

proprietary submissions placed on the record by Aifudi. *Id.* Commerce complied

with Aifudi's request on September 30, 2012. *Id.*

On the same date that Aifudi withdrew from the administrative review,

Shapiro Packaging, the U.S. importer affiliated with Aifudi, entered its notice of

appearance in this case.  Thereafter, Shapiro Packaging filed a case brief and a

rebuttal brief with Commerce.

In the final results, due to Aifudi's withdrawal from the administrative

review, Commerce applied total AFA to Aifudi's and assigned to Aifudi the China-

wide rate equal to 91.73 percent.  Commerce stated:

> Zibo Aifudi withdrew from participation in this segment
> of the proceeding and requested that all of its business
> proprietary submission be destroyed.  Because of this, the
> Department does not have any record evidence upon
> which to determine whether Zibo Aifudi is eligible for a
> separate rate for this review period.  Thus, pursuant to
> Department practice, as Zibo Aifudi has not
> demonstrated its entitlement to a separate rate, we
> consider it to be part of the PRC-entity and subject to the
> PRC-wide rate.

Final Results, *supra* at 14909; A031.

Shapiro Packaging appealed Commerce's decision to the U.S. Court of

International Trade.  The lower court affirmed Commerce's decision:

> In its papers, Shapiro point to record evidence that
> supports its contention that Aifudi is not a government
> controlled entity.  PI's memo at 27-28.  Shapiro requests
> a remand to Commerce for "redetermination".  PI's
> Memo at 28.  Shapiro argues that Commerce should be
> ordered to "determine an AFA rate for Aifudi other than
> the China-wide margin".  PI's Reply at 114.  But Shapiro
> has not convinced the court that there remains sufficient
> information in the record to permit Commerce to
> determine a separate rate for Aifudi, now that Aifudi's
> confidential information has been removed.  Shapiro has
> likewise failed to point to a viable alternate rate that
> Commerce should use in preference to the PRC-wide rate
> that has already been selected.  For these reasons the
> Court must deny Shapiro's request for a remand.

AMS Associates, Inc. v. United States, *supra* at 8; A018.  See Addendum 1.

## SUMMARY OF THE ARGUMENT

Commerce's final results applied total AFA to Aifudi and selected the 91.73 percent China wide margin as the AFA rate.   Shapiro Packaging does not contest the application of AFA as to Aifudi.  Shapiro Packaging contests only Commerce's selection of the China-wide rate as the AFA rate because the administrative record establishes that Aifudi was entitled to a separate company rate.

Commerce's final results determined that application of the China-wide rate was justified because Aifudi withdrew all of its proprietary information from the administrative record, and therefore, there was no record evidence upon which Commerce could determine whether Aifudi was entitled to a separate company rate.  This determination is unsupported by substantial evidence because all of Aifudi's public version submissions, including those submissions establishing the company's entitlement to a separate rate, remained on the record.  A review of the public record confirms that Aifudi was entitled to separate rate status.

Pursuant to a number of cases decided by the lower court, Commerce's acts unlawfully when in applying AFA to a respondent it selects the China-wide rate as the AFA margin when the administrative record confirms that the respondent was entitled to a separate company rate.  The case should therefore be remanded to

Commerce to select an alternate AFA rate as to Aifudi other than the China-wide rate.

## ARGUMENT

### I.    Statement of the Standard of Review

In reviewing the U.S. Court of International Trade's decision to affirm Commerce's final results, this Court applies anew the standard of review of that court.  That is, this Court will "uphold Commerce's determination unless it is 'unsupported by substantial evidence on the record or otherwise not in accordance with law.'" Saha Thai Steel Pipe Public Co., Ltd. v. United States, 635 F.3d 1335, 1340 (Fed. Cir. 2011) (quoting 19 U.S. C. § 1516a(b)(1)(b)(i). *Accord* Micron Tech., Inc. v. United States, 117 F.3d 1386, 1393 (Fed. Cir. 1997).

### II.    Commerce's Determination That It Had No Record Evidence Upon Which To Determine Whether Aifudi Was Eligible For A Separate Rate Is Unsupported By Substantial Evidence In The Administrative Record

In the final results Commerce applied total AFA as to Aifudi and selected a margin of 91.73 percent, equal to the China-wide rate.   Commerce justified its application of the China-wide rate to Aifudi based upon Aifudi's withdrawal from the administrative review and the removal of Aifudi's proprietary information from the record.  Commerce claimed that Aifudi's actions prevented Commerce from

determining whether Aifudi was entitled to a separate rate.  Specifically,

Commerce stated:

> Zibo Aifudi withdrew from participation in this segment
> of the proceeding and requested that all of its business
> proprietary submission be destroyed.  Because of this, the
> Department does not have any record evidence upon
> which to determine whether Zibo Aifudi is eligible for a
> separate rate for this review period.  Thus, pursuant to
> Department practice, as Zibo Aifudi has not
> demonstrated its entitlement to a separate rate, we
> consider it to be part of the PRC-entity and subject to the
> PRC-wide rate.

Final Results, *supra* at 14909.  A031.

However, Commerce's assertion that it did "not have any record evidence

upon which to determine whether Zibo Aifudi is eligible for a separate rate" is

entirely incorrect.  Although Commerce did remove Aifudi's proprietary

submissions from the administrative record, Aifudi's public submissions remained

on the record.   Commerce itself confirmed that Aifudi's previously submitted

public version submissions remained on the record, despite the removal of Aifudi's

proprietary version submissions.  Commerce stated:

> [W]e are writing to confirm that the Department has
> removed and destroyed Aifudi's proprietary submissions.
> The Department has retained public versions and public
> documents as part of the public record.

Letter from Commerce to Counsel for Aifudi dated October 4, 2010 at 1; A313.

Since the public versions of Aifudi's responses remained on the record, including all of Aifudi's public responses pertaining to separate rates, record information thus did in fact exist that enabled Commerce to make a determination as to whether Aifudi was or was not entitled to separate rate status, despite the fact that its margin was to be determined on total AFA.  Under the applicable standard of review, Commerce was required to examine the public record to determine whether or not Aifudi operated free from Chinese government control. Commerce's conclusion that it did "not have any record evidence upon which to determine whether Zibo Aifudi is eligible for a separate rate for this review period" was factually incorrect and, necessarily, was unsupported by substantial evidence in the administrative record.  At a minimum, the case should be remanded to Commerce to determine, based upon record evidence in the public record, whether Aifudi was entitled to separate status during the period of review.

In the briefs filed in the lower court by the Appellees herein, both parties asserted that that Commerce's assignment of the China-wide rate to Aifudi was lawful because Aifudi's public version documents, from which business proprietary information was redacted, did not contain sufficient information for Commerce to conclude that Aifudi operated free from government control.  Such explanations, however, do not reflect the reasoning contained in Commerce's final results and thus constitute impermissible *post-hoc* rationalizations by counsel.

10

Commerce's determinations can only be upheld based upon the reasoning articulated by Commerce in its final results. *See e.g.*, Burlington Truck Lines, Inc. v. United States, 371 U.S., 156, 168-69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); NEC Home Elecs., Ltd. v. United States, 54 F.3d 736, 743 (Fed. Cir.1995); Taian Ziyang Food Co., Ltd. v. United States, 637 F. Supp. 2d 1093, 1132 (2011).

It also appears that the lower court applied an incorrect standard of review. The lower court did not determine whether Commerce's stated reason for its conclusion -- "that the Department does not have any record evidence upon which to determine Zibo Aifudi is eligible for a separate rate for this review period" -- was supported by substantial evidence in the administrative record. Rather, the lower court affirmed the Commerce's decision on the basis that appellant herein "has not convinced the court that there remains sufficient information in the record to permit Commerce to determine a separate rate for Aifudi, now that Aifudi's confidential information has been removed." AMS Associates, Inc. v. United States, *supra* at 8. A018.

The administrative record in this case establishes that Commerce failed to consider the record evidence contained in Aifudi's public version documents that remained on the record after Aifudi's withdrawal from the case. Consequently its determination that it did not have any record evidence upon which to determine whether Aifudi was eligible for a separate rate was not supported by substantial

11

evidence.  Consequently, a remand is necessary in order for Commerce to analyze the record information contained in Aifudi's public version documents and determine whether Aifudi was entitled to a separate rate in this proceeding.

Moreover, a review of the public information contained in Aifudi's responses affirmatively establishes that Aifudi operated free from government control and was entitled to separate rate status.   In the preliminary results of the administrative review Commerce determined that Aifudi was entitled to separate rate status.  Preliminary Results, *supra* at 55570-55571.  A023-024.  When Commerce's decision in the preliminary results are analyzed, it is evident that each determination  made by Commerce was made on the basis of public information that remained on the record, and not proprietary information that was removed from the record.

Commerce's determined in the preliminary results that Aifudi operated in the absence of d*e jure* government control, on the basis of (1) an absence of restrictive stipulations associated with the individual exporter's business and export licenses; (2) legislative enactments decentralizing control of companies; and (3) other formal measures by the government decentralizing control of companies.  Preliminary Results, *supra* at 55570.  A023.  To support these findings, Commerce specifically cited to Zibo Aifudi's Section A response at pages 4-7.  *Id.* at footnote 16.

A review of pages 4-7 of Zibo Aifudi's Section A response establish that they are public in their entirety and no proprietary information is contained on those pages. A37-40. Commerce's preliminary determination as to the absence of de jure government control was made on the basis of public data only. Moreover, the Attachments referenced in those pages are also public documents. Attachment A-1, the 2005 Company Law of the People's Republic of China, is legislation and is public in its entirety. A101-142. Aifudi's business license, included as Exhibit 2 of Aifudi's supplemental response, is also a public document and establishes that there are no governmental constraints on the company's operation. A144 (Chinese version); A278 (English translation). The public version of Aifudi's export certificate, submitted as Exhibit 3 of the Section A response, did range or redact the total dollar amount of investment, registered capital and capital contributions. However, the remainder of the document was public and the public portion of the document established that no governmental entity restrained or restricted Aifudi's business operations. A146-147.

Commerce also determined that Aifudi operated in the absence of de *facto* government control on the basis that Aifudi (1) set its own export prices independent of the government and without the approval of a government authority; (2) has the authority to negotiate and sign contracts and other agreements; (3) maintains autonomy from the government in making decisions

13

regarding the selection of management; and (4) retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing losses. Preliminary Results, *supra* at 55571. A024. To support these findings, Commerce specifically cited to Zibo Aifudi's Section A response at pages 7-10. *Id.* at footnote 18.

Pages 7-10 of Zibo Aifudi Section A response are public except for the individual names of Aifudi's Chairman of the Board and the General Manager. Otherwise, all information on the cited pages are public and do not contain any proprietary information. *Id.* at A040-043. Although the individual identities of the members of the board of directors and senior company management were redacted from the public versions to protect each individual's privacy, Chapter 8 of the joint venture agreement, included as Exhibit 1 of the Supplemental Section A Response, confirms that the board of directors is composed of three persons, two of which are appointed by FDD Associates, the U.S. partner, and the remaining board member is appointed by Golden Moon, the Chinese partner. *Id.* A268-269. The chairman of the board was designated by FDD Associates. *Id.* Thus, the administrative record establishes that the owners of Aifudi appointed the board of directors and the chairman of the board and that the selection of board members and board Chairman was not made by or controlled by Chinese governmental entities.

Similarly, Chapter 9 of the joint venture agreement confirms that the senior management of Aifudi, the general manager and two vice general managers, are appointed by the board of directors, their terms of office are set by the board of directors, and their terms are renewable by a decision of the board of directors. A269-270.  Moreover, the general and vice general managers appoint and hire and supervise departmental managers.  *Id.*  Again the administrative record establishes that senior management is appointed by Aifudi's board of directors and lower level management is appointed by Aifudi's senior management.  The selection of management is also not made by or controlled by Chinese governmental entities.

Finally, in cases where a respondent has established its entitlement to separate rate statues in a previous administrative proceeding under an antidumping duty order, Commerce will normally grant such companies separate rate status in in subsequent administrative reviews based merely upon the filing of a separate rate certification.  In the separate rate certification, the company attests that the criteria upon which Commerce granted separate rate status in the previous proceeding remain unchanged and submits the company's current business license and export certification.

Normally, the separate rate certification is a public document.  Even if a separate rate certification contains proprietary information, it is usually limited to the total dollar amount of investment, registered capital or capital contributions as

15

listed in the business license or export certificate.  Such information is unrelated to

the issue of Chinese governmental control over the operations of the company.

In the instant case, Commerce granted Aifudi separate rate status in the

initial investigation.  Laminated Woven Sacks form the People's Republic of

China, 73 Fed. Reg. 35646, 35647 (June 24, 2008).  As a mandatory respondent in

this proceeding, Aifudi filed its separate rate information with Commerce in the

context of its Section A response, rather than in a separate rate certification.

However, it is not unusual for Commerce to grant separate rate status to companies

that have previously earned separate rate status solely on the basis of public

information.

Each of the criteria relied upon by Commerce to preliminarily determine

that Aifudi was entitled to separate rate status was based upon public, rather than

proprietary information.  Since Aifudi's public version documents remain on the

record and establish Aifudi is entitled to separate rate status, Commerce's

determination there was no record evidence to determine whether Aifudi was

entitled to a separate rate is unsupported by substantial evidence in the

administrative record and must therefore be reversed.

III. **Application of the China-Wide Rate As To Aifudi Was Contrary To Law Because Aifudi Was Entitled To Separate Rate Status**

As reviewed in the statement of facts, Zibo Aifudi withdrew from the administrative review subsequent to the preliminary determination and requested that Commerce destroy all proprietary information submitted by Aifudi during the course of the administrative review. As a result of Aifudi's withdrawal, Commerce applied total AFA to Aifudi. Final Results, *supra* at 14908. As total AFA, Commerce applied the PRC-country wide rate margin, equal to 91.73 percent.

Shapiro Packaging does not contest Commerce's application of adverse facts available as to Aifudi. Shapiro Packaging contests only Commerce's selection of the China wide rate of 91.73 percent to Aifudi as total AFA. Because the public administrative record confirms that during the period of review Aifudi operated free from Chinese government control, application of the China-wide rate to a company entitled to a separate company was contrary to law and must be reversed.

In nonmarket economy cases, Commerce applies a presumption of state control over the respondent's export operations. Sigma Corp. v. United States, 117 F. 3d 1401, 1404-05 (Fed. Cir. 1997). Under this presumption, the respondent is subject to the country-wide rate unless it affirmatively demonstrates an absence of both *de jure* and *de facto* government with respect to its exports. When a

respondent establishes that it operates free of government control, it is entitled to a separate, company-specific rate. _Id_. at 1405.

In this case, application of the 91.73 percent China-wide rate to Aifudi in the final results necessarily presumed Chinese government control over Aifudi's operations. Application of the country-wide rate to a respondent that has demonstrated its entitlement to a separate company rate has been found to be unlawful by the lower court on numerous occasions. *See e.g.*, Qingdao Taifa Group Co., Ltd. v. United States, 33 CIT ___, 637 F. Supp. 2d 1231, 1240 (August 11, 2009); Gerber Food (Yunnan) Co. v. United States, 31 CIT ___, Slip Op. 07-85 (May 24, 2007) (Gerber II); Gerber Food (Yunnan) Co. v. United States, 29 CIT 753, 387 F. Supp. 2d 1270, 1287 (2005) (Gerber 1); and Shandong Huarong General Group Corporation v. United States, 27 CIT 1568, 1594-1596 (2003). A remand for the selection of an alternative total facts available margin is, therefore, required.

In Qingdao Taifa, the lower court affirmed the Department's application of total AFA. The lower court, however, struck down the Department's selection of the China-wide rate as the total AFA rate. The court stated:

> Because the PRC-wide rate thus presumes government control, Commerce may not apply the PRC-wide rate as the AFA rate where the AFA is warranted for sales and FOP data, but the respondent has established independence from government control. In such a situation, there is

18

no connection between the PRC-wide rate and an
estimate of the respondent's actual rate. (citations
omitted).

Accordingly, Commerce could not apply the PRC-
wide rate to Taifa based on Taifa's failures to
report FOP data for wheels or attempts to avoid
producing requested documents regarding sales
and production at verification alone.  Commerce
could apply the PRC wide rate only if Taifa did not
establish its de jure and de facto independence
from government control.

Here Commerce's Preliminary Results found an
absence of de jure and de facto government control
and Commerce's verification report "noted no
indication of government control".  (Citations
omitted).

_Id_. at 1241.

In Gerber I, _supra_, Commerce's final results also invoked total AFA.  The

court, however, rejected Commerce's selection of the China-wide rate as total AFA

rate because Commerce had determined that the respondent operated free from

Chinese government control.  The court stated:

The findings of fact the agency relied upon to support its
invoking "total adverse facts available" pertained to the
disclosure of the terms of the agreement in questionnaire
responses by the two plaintiffs.  These findings were
factually unrelated to the issue of government control.
Commerce neither cited record evidence showing that,
nor made a finding of fact that, either Plaintiff was
subject to the control of the PRC government.  As noted
previously, Commerce made, and maintained through the
review, an actual finding of fact that both Green Fresh
and Gerber were _not_ subject to government control.

19

> Consistent with the decision of the Court of Appeals in
> De Cecco and this Court's decision in Shandong
> Huarong, the court concluded that the determination set
> forth in the Final Results to apply the 198.63 percent
> assessment rate was not supported by substantial
> evidence and, accordingly, was contrary to law.

Gerber I, *supra* at 1287.

In Gerber II, the court reviewed Commerce's remand determination from the

Gerber I decision. In the remand results, Commerce calculated separate

antidumping duty margins for both respondents, based upon the data they

submitted during the initial proceeding. Commerce's remand results, however,

continued to use China-wide rate as adverse facts available rate with respect to the

24 sales that were still subject to AFA. The court again rejected Commerce's

application of the China-wide rate with respect to the 24 sales. The court stated

that Commerce:

> found that both Gerber and Green Fresh are free from
> government control . [ Citations omitted]. As the court
> noted in Gerber I, "Commerce acts unlawfully in
> imposing a rate that presumes government control, such
> as the PRC-wide rate applied in this case, when a
> respondent has been found to be independent of
> government control". [ Citations omitted].

Gerber II, *supra* at 39.

Finally, in Shandong Huarong Commerce applied total AFA due to the

submission of inadequate U.S. sales and factors of production databases by the

respondents. In the final results, Commerce applied total adverse facts available

equal to the China- wide rate, despite the fact that the companies had submitted

data establishing their independence from government control.  The court stated:

> The court does not find proper Commerce's
> determination to reject the Companies' separate rates
> evidence and, thus, assign them the PRC-wide
> antidumping margins based on the presumption of state
> control. . . .  This reasoning, however, cannot be the
> basis for assigning the Companies the PRC-wide
> antidumping duty margin based on facts available, as it is
> clear the Companies did provide evidence of their
> entitlement to separate rates and there is no indication
> that any necessary information was missing or
> incomplete.  [ Citations omitted].  In other words, the
> findings that justified the use of facts available and resort
> to adverse facts available with respect to the Companies'
> sales data and factors of production, cannot be used to
> accord similar treatment to issues relating to the
> companies' evidence of independence from state control.
> Specifically, the record shows that the Companies each
> submitted evidence of independence from state control. .
> . . Thus because the Companies did provide evidence of
> their independence from government control and
> Commerce: (1) verified such information; (2) did not
> request the Companies to remedy any deficiencies in
> their separate rates information and (3) did not find the
> lack of such information dispositive with respect to the
> separate rates determination, the court cannot sustain
> Commerce's determination that the Companies should be
> assigned the PRC-wide antidumping duty margin based
> on facts available.

27 CIT at 1594-1595.

These holdings apply equally to this case.  Although Aifudi withdrew from

the case and the application of total AFA may be appropriate, the selection of the

91.73 percent country-wide margin as the total AFA rate was contrary to law. Because the public administrative record and Commerce's preliminary determination make clear that Aifudi operated free from Chinese government control, Aifudi was entitled to separate rate status in the proceeding, this court should reverse the lower court decision and remand this action to Commerce with instructions to select an alternative AFA rate other than the China-wide rate.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The administrative record continues to contain the public versions of Aifudi's responses as they relate to the issue of whether the company is entitled to a separate rate. As such, Commerce's statement in the final results that it does not have any record evidence to determine whether Aifudi is entitled to a separate rate, is unsupported by substantial evidence. Moreover, the public administrative record establishes that Aifudi is in fact entitled to a separate rate. The lower court has held that when Commerce applies AFA to a respondent, Commerce acts unlawfully when it selects the China-wide rate as AFA when the administrative record establishes that the respondent is entitled to a separate rate. Therefore,

Appellant requests that this court reverse the lower court and remand the action to

Commerce to apply to Aifudi an AFA rate other than the China-wide rate.

<div style="margin-left: 40%;">

Respectfully submitted,


/s/ Lizbeth R. Levinson

Lizbeth R. Levinson
Ronald M. Wisla

KUTAK ROCK LLP
1101 Connecticut Avenue, N.W.
Suite 1000
Washington, DC  20036
  Tel:  (202) 828-2400
  Fax:  (202) 828-2488

</div>

November 26, 2012

# **ADDENDUM**

AMS Associates,  Inc. d/b/a Shapiro Packaging v. United States,
36 CIT ___, Slip Op. 12-98 (July 27, 2012).

Slip Op. 12-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMS ASSOCIATES, INC., d/b/a SHAPIRO PACKAGING, | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| LAMINATED WOVEN SACKS COMMITTEE, COATING EXCELLENCE INTERNATIONAL, LLC, and POLYTEX FIBERS CORPORATION, | : |
| Defendant-Intervenors. | : |

Before: R. Kenton Musgrave, Senior Judge
Court No. 11-00101

**OPINION AND ORDER**

[Denying as moot plaintiff's claim that the Department of Commerce violated its regulations in instructing Customs to suspend liquidation of certain entries of certain laminated sacks from the People's Republic of China, and denying plaintiff's request for remand to determine a new dumping margin.]

Dated: July 27, 2012

*Lizbeth R. Levinson* and *Roland M. Wilsa*, Kutak Rock LLP, Washington, DC, for plaintiff.

*Tara K. Hogan*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Rebecca Cantu*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce.

Court No. 11-00101                                                    Page 2

    *Joseph W. Dorn* and *Jeffrey B. Denning*, of *King & Spaulding*, Washington, DC, for defendant-intervenors.

**Musgrave, Senior Judge:** In this case, the U.S. Department of Commerce, International Trade Administration ("Commerce") investigated the country of origin of products not previously subject to antidumping duties and found them to be within the scope of an existing antidumping order. Plaintiff claimed that in doing so Commerce selectively applied its regulations and improperly ordered the retroactive suspension of liquidation of Plaintiff's entries. However, in the interim, the affected entries were liquidated in due course, and there appears no *res* remains affected by the complained of actions by Commerce. For the reasons explained below, Plaintiff's request that the court remand the results of the administrative review for a redetermination of the applicable margin is denied.

### I. Facts

    Commerce found that laminated woven sacks from the People's Republic of China ("PRC") were being dumped in *Laminated Woven Sacks from the People's Republic of China*. 73 Fed. Reg. 45941 (Aug. 7, 2008) ("LWS Order"). The scope of the LWS Order was defined in part as "bags or sacks consisting of one or more plies of fabric consisting of woven polypropylene strip and/or polyethylene" that are "laminated to an exterior ply of plastic film or to an exterior ply of paper that is suitable for high quality print graphics." LWS Order, 73 Fed. Reg. at 45942.

    In September, 2009, Commerce undertook an administrative review of the LWS Order for the period January 31, 2008 through July 31, 2009 ("Period of Review"). During the review petitioners Laminated Woven Sacks Committee ("LWSC") requested that Commerce

investigate how respondent Zibo Aifudi Plastic Packaging Co., Ltd. ("Aifudi") determined

whether merchandise was subject to the LWS Order due to concerns that not all of Aifudi's

production of LWS was being included in the information provided to Commerce.[1]  At issue

were sacks made in the PRC by Aifudi from fabric that originated elsewhere.  Commerce

investigated the origin of the Aifudi sacks made with non-PRC origin fabric within the ongoing

administrative review.  Despite requests by Aifudi, Commerce chose not to initiate a formal

scope inquiry under 19 C.F.R. § 351.225.

         Aifudi argued to Commerce that a country-of-origin ruling it obtained from U.S.

Customs and Border Protection ("CBP") provided an adequate basis for its decision not to

include sacks made with non-PRC-origin fabric.  *See* HQ N08508, dated May 27, 2008.

Pursuant to that ruling, Aifudi declared a non-PRC origin for LWS made with non-PRC origin

fabric.  As a result, those LWS entries were not subject to antidumping deposits upon entry.

         Commerce determined pursuant to a substantial transformation analysis that the

PRC was the country of origin of the Aifudi LWS.  *Preliminary Decision Regarding the Country*

*of Origin of Laminated Woven Sacks Exported by [Aifudi]*, (May 25, 2010) ("Preliminary

Decision"), Tab 7 to Pl's Appx.  Based upon this finding, Commerce then issued a "clarification"

of its liquidation instructions to CBP.  Commerce Instructions to CBP dated July 23, 2010

("Clarification"), Tab 8 to Pl's Appx.  Commerce instructed CBP to "continue to suspend

liquidation of all LWS from the PRC, regardless of the origin of the woven fabric, that is entered,

---

         [1]  *See* letter from King & Spalding commenting on respondent's questionnaire responses,
dated December 18, 2009, attached as Tab 3 to Appendix to Plaintiff's Memorandum of Points
and Authorities in Support of Plaintiff's 56.2 Motion for Judgment on the Agency Record ("Pl's
Appx.").

or withdrawn from warehouse, for consumption, on or after January 31, 2008." Clarification at

2. Plaintiff argued here the effect of the Clarification was to retroactively suspend liquidation of

and collect cash deposits on all entries of Aifudi sacks made since January 31, 2008.[2] However,

by the time this instruction was transmitted to Customs, all affected entries within the period of

review had apparently already liquidated in due course.[3]

      In March, 2011, Commerce issued the final results of the LWS administrative

review.[4] During the administrative review, Commerce had preliminarily found that Aifudi's

antidumping margin was equal to 0.68% in its preliminary results of the administrative review.

*Laminated Woven Sacks from the People's Republic of China: Preliminary Results of*

*Antidumping Administrative Review*, 75 Fed. Reg. 55568 (September 13, 2010) ("Preliminary

Results"). Shortly thereafter, Aifudi withdrew from the administrative review and requested that

all business confidential data that it had submitted be destroyed. *See* Sept. 20, 2010 letter from

Ronald Wilsa to Sec. of Commerce, Tab 10 to Pl's Appx. In its place, Shapiro Packaging, the

related-party importer of Aifudi's sacks, entered its notice of appearance before Commerce.

Commerce stated in the Final Results that because Aifudi withdrew its confidential submissions,

"the Department does not have any record evidence upon which to determine whether [Aifudi] is

eligible for a separate rate for the review period." Final Results, 76 Fed. Reg. at 14,909.

---

[2]  Plaintiff's Memorandum in Support of its 56.2 Motion for Judgment on the Agency Record ("Pl's Memo"), at 7 n. 4.

[3]  Following a request by the court, the parties have stipulated that they were unable to identify any entry of LWS made from non-PRC origin fabric that remains unliquidated, despite Commerce's Clarification instruction. *See* Joint Response to Court's Order dated June 26, 2012.

[4]  *Laminated Woven Sacks from China: Final Results of First Antidumping Duty Administrative Review*, 76 Fed. Reg. 14906 (March 18, 2011) ("Final Results").

Commerce used adverse facts available as the basis for treating Aifudi as part of the China-wide entity in the final results of the administrative review with a margin of 91.73%, chosen as "the highest rate from any segment of this proceeding". *Id.*

## II. Arguments Presented

Plaintiff AMS Associates, Inc., d/b/a Shapiro Packaging ("Shapiro") argues that Commerce violated its own regulations by ordering CBP to retroactively suspend liquidation of LWS entries and collect estimated antidumping duties on shipments entered prior to the initiation of the scope review. Pl's Memo at 12.    Shapiro argues that Commerce should not have applied the China-wide rate of 91.73% to imports of Aifudi LWS.  Although Shapiro does not contest the application of adverse facts available due to Aifudi's withdrawal of its confidential business information, Shapiro argues that the remaining public information is sufficient to support a finding that Aifudi was not state-controlled.    Plaintiff's Reply Brief ("Pl's Reply") at 11. Because Commerce failed to consider this information, Shapiro argues, the matter should be remanded for reconsideration. *Id.*

Shapiro also takes issue with Commerce's statement in the Final Results that "the Department does not have any record evidence upon which to determine whether [Aifudi] is eligible for a separate rate".    Final Results, 76 Fed. Reg. at 14,909.  Shapiro contends that adequate information proving Aifudi's lack of government control exists in the public record and was ignored by Commerce. Pl's Reply at 11.  Shapiro requests that the court remand the case to Commerce for determination of an AFA rate other than the China-wide margin. *Id.*

The government argues that Commerce's actions were proper because the agency has the right to determine whether to launch a formal scope inquiry or to investigate scope issues

Court No. 11-00101                                                          Page 6

as part of an administrative review.  Defendant's Memorandum in Opposition to Plaintiff's Rule

56.2 Motion for Judgment on the Agency Record ("Def's Memo") at 9.  On the second issue, the

government argues that Aifudi failed to demonstrate its qualifications for a separate rate.

Commerce reasonably found that its preliminary determination (based upon the later-withdrawn

confidential information) was no longer supported by the record and the evidence provided by

Shapiro was insufficient to prove Aifudi's eligibility for a separate rate.  Def's Memo at 10.

      Petitioner LWSC argues that Commerce did not illegally expand the scope of the

orders and that Commerce had previously used the substantial transformation analysis within an

administrative review.  LWSC's Response to Shapiro's Rule 56.2 Memorandum In Support of its

Motion for Judgment on the Agency Record ("LWSC's Resp.") at 13-16.  LWSC argues that

Shapiro's separate rate argument should be dismissed due to failure to exhaust its administrative

remedies.  *Id.* at 3.  Alternatively, LWSC argues that because Aifudi prevented Commerce from

verifying the information that supported its preliminary determination, it should suffer the

consequences of Commerce's denial of a separate rate in the final results.

### III. Standard of Review

      This court upholds a determination by Commerce unless it is "unsupported by

substantial evidence on the record or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(I); *NSK Ltd. v. United States*, 510 F.3d 1375, 1379 (Fed. Cir. 2007).  As

explained in *E.I. DuPont de Nemours & Co. v. United States*, 22 CIT 370, 373, 8 F. Supp. 2d

854, 857 (1998) (some citations omitted):

> In determining whether Commerce's interpretation and application of the
> antidumping statute is in accordance with law, this court applies the two-step
> analysis articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837, 842-3, 104 S.Ct. 2778 (1984), as applied and refined by the Federal Circuit. The first task is 'to determine whether Congress has 'directly spoken to the precise question at issue.'' *Id.*    If the statute unambiguously deals with the subject matter in issue, the court, as well as the agency, must give effect to the intent of Congress. *Id.*

'If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Considerable weight is accorded Commerce's construction of the antidumping laws, whether that construction manifests itself in the application of the statute, [citations omitted] or in the promulgation of a regulation [citations omitted].

"In order to effectuate review of the reasonableness of agency action, '[c]ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010), quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors.  *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

### *IV. Scope Inquiry and Suspension of Liquidation Claims*

Shapiro's arguments regarding the LWS scope inquiry and suspension of liquidation are moot.  The affected entries, if there ever were any, have all apparently liquidated at their original duty rate, unaffected by the allegedly *ultra vires* actions by Commerce.  For this reason, the court dismisses that portion of Shapiro's complaint relating to the scope inquiry and Commerce's retroactive instructions suspending entries because no *res* over which the court has jurisdiction remains.

### *V. Adverse Facts Available Analysis*

In non-market economy cases, Commerce presumes state control over respondents' export operations. *Sigma Corp. v. United States*, 117 F.3d 1401, 1404-05 (Fed. Cir. 1997). Respondents subject to the presumption are subject to the country-wide rate unless they affirmatively demonstrate an absence of both *de jure* and *de facto* government control over the company's exports. *Id.* at 1405, *see also* Def.'s Memo at 24, *citing Silicon Carbide from the PRC*, 59 Fed. Reg. 22,585, 22,586-87 (Dept. of Commerce May 2, 1994) (Final Determination). Respondents must provide information regarding corporate structure, ownership, affiliations with other entities and their export sales negotiation process. Def.'s Memo at 24-25 (citations omitted).

In its papers, Shapiro points to record evidence that supports its contention that Aifudi is not a government-controlled entity. Pl's Memo, at 27-28. Shapiro requests a remand to Commerce for a "redetermination". Pl's Memo, at 28. Shapiro argues that Commerce should be ordered to "determine an AFA rate for Aifudi other than the China-wide margin". Pl's Reply at 14. But Shapiro has not convinced the court that there remains sufficient information in the record to permit Commerce to determine a separate rate for Aifudi, now that Aifudi's confidential information has been removed. Shapiro has likewise failed to point to a viable alternate rate that Commerce should use in preference to the PRC-wide rate that has already been selected. For these reasons the court must deny Shapiro's request for a remand.

### *VI. Conclusion*

Plaintiff's claims that Commerce violated its regulations in performing a country of origin scope inquiry during the administrative review, and illegally suspended liquidation of

Court No. 11-00101                                                      Page 9

Shapiro entries of LWS with countries of origin other than the PRC are moot and are hereby dismissed.

The court hereby sustains Commerce's decision to apply adverse facts available to Aifudi and as a result the PRC-wide rate to its imports of LWS during the review period. Judgment will enter accordingly.

SO ORDERED.

                                          /s/  R. Kenton Musgrave
                                          R.  Kenton Musgrave, Senior Judge

Dated: July 27, 2012

        New York, New York

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |
|---|---|
| AMS ASSOCIATES, INC., d/b/a SHAPIRO PACKAGING, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> :    Before: R. Kenton Musgrave, Senior Judge <br>    Court No. 11-00101 |
| UNITED STATES, | : <br> : |
| Defendant, | : <br> : |
| and | : <br> : |
| LAMINATED WOVEN SACKS COMMITTEE, COATING EXCELLENCE INTERNATIONAL, LLC, and POLYTEX FIBERS CORPORATION, | : <br> : <br> : <br> : |
| Defendant-Intervenors. | : <br> : |

## JUDGMENT

This action having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now, therefore, in conformity with said decision, it is

**ORDERED, ADJUDGED and DECREED** that this action is hereby dismissed.

SO ORDERED.

                                     /s/ R. Kenton Musgrave
                                       R. Kenton Musgrave, Senior Judge

Dated: July 27, 2012
        New York, New York

# CERTIFICATE OF SERVICE

<u>AMS Associates, Inc. v. United States</u>
<u>Appeal No. 12-1688</u>

     I hereby certify that under penalty of perjury that on this the 26th day of November, 2012, the foregoing Principal Brief of Appellant was filed by electronic means with the Clerk of the U.S. Court of Appeals for the Federal Circuit using the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an e-mail address of record:

**Counsel for Defendant-Appellee:**

**Tara Kathleen Hogan, Esq.**
U.S. Department of Justice
Commercial Litigation Branch-Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2228
Fax: (202) 305-7643
Email: tara.hogan@usdoj.gov

**Counsel for Intervenor:**

**Joseph W. Dorn**
King & Spalding, LLP
1700 Pennsylvania Avenue, NW.
Suite 200
Washington, DC 20006-4706
(202) 737-0500
Fax: (202) 626-3737
Email: jdorn@kslaw.com

/s/_____
    Lizbeth R. Levinson

KUTAK ROCK LLP
1101 Connecticut Ave., N.W.
Suite 1000
Washington, DC  20036
Tel/Fax:  (202) 828-2339 / (202) 828-2488
Email: liz.levinson@kutakrock.com

Form 19

FORM 19.  Certificate of Compliance With Rule 32(a)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [        4,977        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                *Microsoft Word 2010*                ] in
[                *Font Size 14, Times New Roman*                ], or

☐    The brief has been prepared in a monospaced typeface using
[        *state name and version of word processing program*        ] with [
[        *state number of characters per inch and name of type style*        ].

_____
(Signature of Attorney)

_____
Lizbeth R Levinson
(Name of Attorney)

_____
Appellant
(State whether representing appellant, appellee, etc.)

_____
November 24, 2012
(Date)

Reset Fields

142